## DOW TAX NOT A LIEN UPON PROPERTY OF AN INNOCENT NON-RESIDENT.

Circuit Court of Ashtabula County.

WILLIAM G. HAAS y. P. C. REMICK, AUDITOR, AND B. E. THAYER, TREASURER OF ASHTABULA COUNTY. *

Decided, September, 1910.

*Taxation—Property of a Non-Resident Not Subject to Lien for Dow Tax —Where Brought Into the State and Used Without Owner's Knowledge in Furtherance of the Liquor Traffic in "Dry" Territory—Laws at Time and Place of Making a Contract Control—Sections 6077-8-9.*

H, a resident of the state of Pennsylvania was the owner of a boat which he leased to D to be used exclusively on the waters of Erie Bay within said state. D, without the knowledge or consent of H, brought said boat within the jurisdiction of a county in Ohio which had

---

* For previous opinion in same case, see *ante*, page 1.

voted "dry" under the provisions of 99 O. L., 35, known as the "Rose law" where he used it for the sale of intoxicating liquor.

*Held:*  Such boat can not be levied upon and sold under the provisions of Section 4364-12, Revised Statutes (General Code, 6077-8-9), to pay the tax assessed against D.

*Allen M. Cox,* for plaintiff.

*Fred. R. Hogue* and *Wayne B. Wheeler,* contra.

METCALFE, J.; FILLIUS, J., and MARVIN, J. (sitting in place of Laubie, J.), concur.

The plaintiff seeks by injunction to restrain the sale of his property for the payment of Dow tax levied thereon by the defendants.  The plaintiff is a resident of Erie, Pennsylvania, and is the owner of a gasoline launch known as the Ah-go-on.  In the summer of 1909, the plaintiff granted to Doering & Huster the right to use his boat on Erie bay, but it does not appear that there was any written lease or other agreement executed between them.  There are in evidence two copies of a written lease in form from Haas to Doering & Huster, but neither of these copies were signed by any of the parties.  The petition alleges that there was a lease from Haas to Doering & Huster, and it seems to be regarded by counsel in argument as of some importance whether there was or was not a written lease, but in our judgment it is entirely immaterial whether the boat got into Doering's possession by virtue of a written lease or by verbal permission only.  The extent of the power granted by Haas to Doering & Huster was limited to the right to use the boat within the waters of Erie bay, and wholly within the state of Pennsylvania.

After Doering & Huster had been in possession of the boat for some time Doering loaded it with intoxicating liquors and ran it out of Erie bay into the lake two or three miles from Conneaut, Ohio, and proceeded to dispose of his cargo to the thirsty souls of Conneaut and vicinity who were unable to solace themselves on shore.  It is conceded that Ashtabula county had voted "dry" under the provisions of the Rose county local option law prior to the visit of the Ah-go-on, and the waters of Lake Erie where Doering was operating are within the jurisdiction of that county.

When knowledge of Doering's proceedings came to the prosecuting attorney he caused the Dow tax to be placed upon the duplicate of the county, and a levy was made in pursuance of the statute upon the boat, its fixtures and cargo, and the property was advertised for sale. Thereupon the plaintiff brought this action to restrain the sale of the boat alleging his ownership of the property; his residence in the state of Pennsylvania; his contract with Doering & Huster, permitting them to use the boat in Erie Bay; and that the property was taken out of his possession and out of the state of Pennsylvania against his wishes, and without his knowledge or consent; and that he had no knowledge of the purpose to which the boat was devoted by Doering. And these allegations we find are sustained by the evidence.

The question thus arises, can the collection of the Dow tax assessed against Doering be enforced by a levy upon and sale of the property of the plaintiff, which had been brought in to the state of Ohio from a neighboring state without his knowledge or consent, and devoted to a business made illegal by the laws of Ohio? We must answer this question in the negative. The claim of the right of the defendants to sell this boat regardless of the rights of the plaintiff is founded on language found in Section 4364-12, Revised Statutes (General Code, 6078). Without quoting the entire section which provides the course to be pursued when property has been levied upon for the payment of a Dow tax, the statute reads:

"Nor shall any claim of property by any third person to such goods and chattels so used in carrying on such business avail against such levy so made by the treasurer."

On the one hand it is urged that this section absolutely precludes the owner of property used in an unlawful sale of intoxicating liquors from asserting any claim thereto even though he had no knowledge of such sales or his property be brought from another state without his consent. And on the other hand it is claimed that the quoted portion of Section 4364-12 is unconstitutional in that it deprives an owner of his property arbitrarily, and without due course of law, or that if not unconstitutional it

can have no extra territorial application, and can not affect the
rights of a citizen of another state where the property is brought
within the state of Ohio without the owner's knowledge or con-
sent.

The simple question here is, where a resident of the state of
Pennsylvania gives to another, by contract or otherwise, the right
to use his property within the state of Pennsylvania, and the
renter without the knowledge of the owner brings the property
into the state of Ohio and devotes it to an illegal purpose, can
the property itself be taken to discharge a tax or fine imposed
upon the wrongdoer who has taken it away? The act of taking
the property out of the state of Pennsylvania and bringing it into
the state of Ohio was an act of trespass (20 Am. & Eng. Enc.
L., 571). It is said that the levy upon this property while an
exercise of the taxing power, is also an exercise of the police
power of the state, made necessary in dealing with the traffic in
intoxicating liquors in consequence of the great evils that flow
from that traffic and the difficulty in enforcing the law. We do
not question that the dealing with the traffic in intoxicating
liquors is a proper subject of the exercise of the police powers
of the state, but the exercise of that power must not be unreason-
able and oppressive, and it must be viewed in the light of those
constitutional provisions which protect and safeguard the rights
of the individual citizen, especially if that citizen be innocent of
wrongdoing. In any event the police laws of a state have no
extra-territorial effect.

If the plaintiff had brought his property voluntarily within
the state of Ohio, or had permited it to be brought here, then it
would at once become amenable to the police laws of the state, but
that is not the case here. The property was brought within the
state of Ohio without the owner's consent. The situs of the prop-
erty at the time it was taken from the plaintiff was the state of
Pennsylvania. The plaintiff granted the right to Doering to use
it within the state of Pennsylvania. Can it be said that when the
plaintiff made his contract with Doering that the police laws of
the state of Ohio entered into and formed a part of that con-
tract? Certainly not unless that contract was to be performed
within the state of Ohio. He was only bound to take notice of

the laws of the state where his contract was made and to be performed. A contract is made with reference to the laws of the place where it is to be performed, and those laws enter into and become a part of it. So that the laws of the state of Ohio, which deal with the traffic in intoxicating liquors, enter into every contract which a man makes with reference to his property within the state of Ohio, and this is the basis on which the cases dealing with questions relating to priority of liens or the priority of the tax over the rights of lessors and lienholders rest. In *Sampson* v. *Servise*, 2 C. C. Dec., 246, it is said:

"The lien for the assessments and penalties prescribed by the act entitled 'an act providing against the evils resulting from the traffic in intoxicating liquors' attach to the real property on and in which the business of such traffic is conducted by a lessee, although the lease forbids sales on the premises; * * * it is a universally recognized principle that laws which exist at the time of making a contract and in the place where it is made and is to be performed enter into and make a part of it."

In *Mullen* v. *Peck*, 49 O. S., 447, the lessor of premises was held for the payment of damages caused by unlawful sales of intoxicating liquors without her knowledge or consent, where the sale was made contrary to an express stipulation in the lease, but "where the premises on which the liquors were sold were occupied by the seller under a lease from the owner of a life estate therein, the estate in remainder can not be held for the damages caused by such sales." On page 462 the court say:

"We are satisfied it is only her (Mrs. Peck's) estate in the property that can be subjected to the payment of the plaintiff's judgment and that the estate in remainder can not be taken * * * nor can it with propriety be said that the owners of the estate in remainder permitted the premises to be used for the sale of liquors, for during the continuance of the life estate they had no control over them and their estate in the property could not be made liable by any act of the owner of the estate for life."

In *Stich* v. *State*, 71 O. S., 463, the court say:

"The laws in force at the time and place where a contract is made and where it is to be performed which in their nature are

applicable, enter into and become a part of the contract. And the contract as well as subsequent legislation is to be construed with respect to its efficacy as well as its meaning in the light of all such statutes as are applicable.''

So in this case the contract of the plaintiff with Doering which permitted the latter to use his property in the state of Pennsylvania was made with reference to the laws of that state and not Ohio, and the act of Doering in bringing the boat into Ohio was not anticipated in the contract with Haas nor was it in accordance with its terms; and the unlawful act of a trespasser in bringing the property into Ohio and using it for an illegal purpose would not affect the right of the owner to reclaim it.

We are not going so far in this case as to say that the clause in Section 4364-12 above quoted is unconstitutional. Such a holding is unnecessary. We simply say that it has no application in this case, that it can not apply where the property is brought by a trespasser from another state into this state. While we may sympathize with what has been said by distinguished counsel in this case about the necessity for drastic measures in enforcing the laws relating to the liquor traffic, yet zeal for the enforcement of righteous laws should not override the rights of the citizen who is innocent of wrongdoing.

Arriving at this conclusion we deem it unnecessary to discuss other questions in the case arising from the former holding of this court on demurrer to the petition. The decree in this case must be entered for the plaintiff.